IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                        *

KALLIATEN SEKHNEB KHEPERA-BEY,
*formerly known as Khaval Stewart**

        Plaintiff,                      *

        v.                              *       CIVIL NO.: WDQ-11-1269

SANTANDER CONSUMER                      *
USA, INC., *et al.*,

                                        *

        Defendants.
*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

KalliAten SekhNeb Khepera-Bey ("Khepera-Bey")[1] sued
Santander Consumer USA, Inc. ("Santander") and Renaissance
Recovery Solutions, LLC ("Renaissance") for violating the Fair
Debt Collection Practices Act[2] ("FDCPA"), and other claims.  For
the following reasons, Khepera-Bey's motion for leave to file
his second amended complaint will be granted in part and denied
in part, and his 15 other pending motions[3] will be denied.
Renaissance's motion to dismiss will be granted in part.

_____

[1] When he filed his first complaint in this Court, Khepera-Bey
was named Khaval Stewart.  Khepera-Bey has since notified the
Court that on November 16, 2011, he changed his name to Khepera-
Bey to reflect his religious beliefs.  ECF Nos. 45, 57.  The
Court will refer to him as "Khepera-Bey."

[2] 15 U.S.C. §§ 1692a, et seq. (2006).

[3] The motions ask the Court to: vacate the Court's order
dismissing the original complaint (ECF No. 33), vacate
Santander's motion to dismiss the original complaint (ECF No.
36), "evidence" the defendants' fraud or liability (ECF Nos. 37,

I.   Background[4]

On August 10, 2006, Khepera-Bey bought a 2003 Nissan
Pathfinder from Lanham Ford[5] under a retail installment contract
("RIC"), which was assigned to DC Financial Services of America.
ECF No. 4-2.  The Certificate of Title listed Khaval Stewart,
Khepera-Bey's former name, as the registered owner, and "DC Fin.
Svcs. Amer. LLC" as the secured party.  ECF No. 31 Ex. X1 at 6.

Khepera-Bey received a copy of the RIC when he bought the
car; it stated that the buyer had received "a true and
completely filled in copy of this Retail Installment Contract."

---

38, 39, 61), order a more definite statement (ECF No. 41), order
discovery and sanctions for failing to provide discovery (ECF
No. 42), clarify the complaint (ECF No. 55), support his motion
to vacate the Court's order (ECF No. 56), grant default judgment
against the defendants (ECF Nos. 59, 60, 65, 67), and "transfer
[his] case to [the Court's] De Jure venue of Law" and adjudicate
the action "in accord with the Moor Sundry Act of 1790," (ECF
No. 68).  The Moors Sundry Act of 1790 was passed by the South
Carolina legislature and granted special status to the subjects
of the Sultan of Morocco.  It recognized Moors as "white" people
with jury duty as a privilege.  Moors were not to be subjected
to The Negro Act governing blacks and slaves.  Moors Sundry Act
of 1790, *available at* http://en.wikipedia.org/wiki/Moors_
Sundry_Act_of_1790, accessed Mar. 23, 2012.

[4] For the motion to dismiss, the well-pled allegations in
Khepera-Bey's complaint are accepted as true.  *See Brockington
v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).

[5] Lanham is in Prince George's County.

2

ECF No. 37-1 at 12.[6]  The seller's signature block of the RIC
looks like this:

X_____       _____
  *Seller Signs*                       *By*
                                    _____
                                       *Title*

A signature appeared on the "*By*" line, and "Sales Mgr." is
faintly apparent on the "*Title*" line on the copy Khepera-Bey
received when he bought the car.  "Seller Signs" was blank.  *Id.*
The RIC stated that if Khepera-Bey defaulted the financer could,
"without the use of force or other breach of the peace . . .
enter the premises where the vehicle may be and lawfully repos-
sess (take back) the vehicle."  ECF No. 1 Ex. M.

    Khepera-Bey made monthly payments to CitiFinancial Auto[7]
until late 2010.  On August 12, 2010, CitiFinancial sent
Khepera-Bey a notice that his "account [was] past due."  ECF No.
1 Ex. 3.  It noted that CitiFinancial had "attempted to call
[him] several times" to collect $390.32 in overdue payments.
*Id.*  On August 21, 2010, CitiFinancial sent another letter,

_____

[6] Khepera-Bey references his copy of the RIC in the Amended
Complaint as Exhibit N, but it is attached to a later filing.
*See* ECF No. 31 at 17; ECF No. 37-1 at 11-12.  On the exihibit,
Khepera-Bey wrote that he received the copy from the dealer in
April 2011.  ECF No. 37-1 at 11-12.

[7] CitiFinancial Auto bought the RIC from Chrysler.  ECF No. 35
Ex. 4A.

stating that Khepera-Bey's account was in default. ECF No. 35
Ex. X-33.

After September 6, 2010, Santander notified Khepera-Bey
that it had acquired the RIC. ECF No. 1 lns. 43-44[8]; ECF No. 4
at 2. On September 25, 2010, Santander called Khepera-Bey at
7:35 AM to collect a payment. ECF No. 1 lns. 78-79. On October
2, 2010, Khepera-Bey sent Santander a letter asking Santander to
verify his debt. ECF No. 31 at 9; ECF No. 1 Ex. C. Santander
responded with an affidavit listing companies whose debt
Santander services, including CifiFinancial Auto Credit Corp,
CitiFinancial Auto Corporation, and DaimlerChrysler Services
North America LLC, and continued to send Khepera-Bey a monthly
bill. *Id.* at lns. 82-86; ECF No. 1 Ex. Y.

After October 4, 2010, Santander sent Khepera-Bey a bill
that included an "account summary" and "account status." ECF
No. 1 Ex D. As of October 4, 2010, Khepera-Bey's account was 39
days delinquent, and he had not made payments due on August 25,
2010 or September 25, 2010. *Id.* at 1. Khepera-Bey made no
payments to Santander until October 10, 2010, when he paid
$405.27, one monthly installment. ECF No. 1 at lns. 101-03; ECF
No. 4 at 5.

---

[8] Although the Court dismissed Khepera-Bey's original complaint,
he continues to refer to portions of it, including most of the
facts supporting his claims, in his amended complaints.

Khepera-Bey sent cease and desist letters to Santander on October 27, 2010, ECF No. 1 lns. 144-45, and November 26, 2010, ECF No. 4-1 at 6; ECF No. 1 ln. 167.  Santander acknowledged receiving the second letter and promised not to call Khepera-Bey again.  ECF No. 1, Ex. J.

On November 15, 2010, Santander sent Khepera-Bey a letter telling him that it intended to repossess his car because Khepera-Bey had missed the September 25 and October 25 payments, and Santander had not received Khepera-Bey's November 25, 2010 payment.  ECF No. 1 Ex. G.

Before December 2, 2010, Khepera-Bey filed a complaint with the Maryland Department of Labor, Licensing and Regulation ("DLLR") about Santander's collection practices.  ECF No. 1 Ex. K.  DLLR asked Santander to provide documentation of the debt. *Id*. Ex. M.  On December 20, 2011, Santander provided a copy of the RIC to the DLLR to verify the debt.  ECF No. 35-1 at 26-27; ECF No. 1 Ex. M.  "Lanham Ford" was written on the "Seller Signs" line.  ECF No. 1 Ex. M.  DLLR forwarded the copy to Khepera-Bey.  *Id*.

On January 7, 2011, at 11:30 PM, Renaissance repossessed Khepera-Bey's car for Santander.  *Id*. at lns. 354-60.  Khepera-Bey told Renaissance's employee that the debt was disputed.  *Id*. at ln. 361.  The employee continued the repossession with the permission of police officers Khepera-Bey had called to the

5

scene.  *Id.* at lns. 370-79.  One police officer or the employee
yelled to Khepera-Bey that he "should have paid [his] car
payment" in front of his neighbors who had gathered to watch the
repossession.[9]  *Id.* at lns. 392-95.  The repossession and debt
are on Khepera-Bey's credit report.  *Id.* at lns. 408-09.

On January 11, 2011, Santander mailed Khepera-Bey a letter
dated January 9, 2011, stating that it would sell the car at a
private sale in Elkridge, Maryland[10] on or after January 20,
2011, unless he paid his remaining debt and the cost of
repossessing the car.  ECF No. 1 Ex. P.

On January 31, 2011, the Maryland Motor Vehicle Admini-
stration ("MVA") issued Santander a repossession title in the
name of DC Financial.  *Id.* at lns. 575-77; ECF No. 35 Ex. X-13.
On February 17, 2011, Khepera-Bey recovered his damaged car from
Renaissance.  ECF No. 1 lns. 513-18.  On March 30, 2011,
Chrysler Financial Services stated that it did not hold a
security interest or right of ownership in Khepera-Bey's car.
ECF No. 31 Ex. X1 at 1.

---

[9] In his proposed second amended complaint, Khepera-Bey
incorporates his earlier statement that an officer yelled at
him, but also alleges that Renaissance's employee shouted the
statements.  ECF No. 35-1 ¶10.3.  A "witness statement" attached
to the original complaint states the officer and employee made
the same statement.  ECF No. 1 Ex. 2.

[10] Elkridge is in Howard County, Maryland.

6

Khepera-Bey alleges that his college grades fell below a D average, he lost sleep and his chance for employment, and gained weight because of Santander's attempts to collect his car payments.  ECF No. 1 lns. 674-703.

On May 6, 2011, Khepera-Bey sued Santander and Renaissance alleging that they had violated the FDCPA, 15 U.S.C. §§ 1692-1692p, the Maryland Fair Debt Collection Practices Act, Md. Code. Ann., Commercial Law § 14-202 (West 2010), and had committed fraud, extortion, theft, and Intentional Infliction of Emotional Distress.  ECF No. 1.

Santander moved to dismiss the complaint, and Khepera-Bey moved for leave to file an amended complaint and other relief. ECF Nos. 4, 14-16, 21, 22, 25.  On October 6, 2011, the Court allowed Khepera-Bey to amend the complaint but dismissed most of it for failure to state a claim.[11]  ECF No. 29.

On August 23, 2011, the MVA determined that the repossess-ion title had been issued in error because Santander had "failed to adequately exhibit that it had a security interest in the 2003 Nissan and a right to possess the vehicle," and reinstated Khepera-Bey's registration and title as they appeared on August

---

[11] The Court also denied Khepera-Bey's motions for summary judgment, to amend the summary judgment motion, and for declaration of bad faith.  The Court granted Khepera-Bey's motion for alternative service on Renaissance.  ECF No. 29.

10, 2006--that is, listing "DC Fin Svcs" as a lienholder.  ECF
No. 35 Ex. X-13.

Between October 12, 2011 and March 7, 2011, Khepera-Bey
filed 16 motions and "notices" that this Court will construe as
motions.  *See* Docket.  On October 26, 2011, Khepera-Bey moved
for leave to file a second amended complaint.  ECF No. 35.  On
December 1, 2011, Renaissance moved to dismiss the first amended
complaint for failure to state a claim against it.  ECF No. 47.
The defendants also moved for an order barring Khepera-Bey from
filing further motions.  ECF Nos. 40, 63.

## II. Analysis

### A.  Khepera-Bey's Motions

#### 1.  Motion for Special Appearance and Challenge to *Pro Se* Status

Khepera-Bey asked the Court "to grant [him a] Special
Appearance in the Honorable Court's proceedings for this matter
. . . [because he] is not under the jurisdiction of the null and
void 14th Amendment."  ECF No. 20 at 2.  He also objects to
application of the term "*pro se*" to him, preferring he be
referred to as *in propria persona* (Latin for "in one's own
person").  The terms are interchangeable and the docket will not
be changed.  *See* Black's Law Dictionary (2009); *Bank of Am.
Nat'l Ass'n v. Derisme*, No. 10-cv-0900, 2010 WL 3211066, at *4
n.5 (D. Conn. Aug. 13, 2010).

"[T]he distinction between general and special appearances in federal practice has been abolished." *Davenport v. Ralph N. Peters & Co.*, 386 F.2d 199, 204 (4th Cir. 1967).[12]  Khepera-Bey's requests will be denied.

2.   Motions to Vacate Filing and Court Order

Khepera-Bey moved to vacate the Court's order dismissing his original and amended complaint, and to vacate Santander's motion to dismiss.  ECF Nos. 33, 36, 56.  His motion to vacate Santander's motion will be construed as an opposition to Santander's motion to dismiss.  His motions to vacate the Court's order will be construed as motions for reconsideration.

The Clerk of the Court told Khepera-Bey that he had to respond to Santander's motion to dismiss by July 9, 2011.  ECF No. 7 at 1 (Rule 12/56 letter).  The Clerk also told Khepera-Bey that if he "d[id] not file a timely written response, the Court may dismiss the case or enter judgment against [him] without further notice."  *Id.*  Khepera-Bey filed the motion to vacate Santander's motion on November 2, 2011, almost four months after

---

[12] Although the Fourteenth Amendment to the United States Constitution is binding on this Court, *e.g. Richardson v. Branker*, 668 F.3d 128, 136 (4th Cir. 2012) (applying Fourteenth Amendment), Khepera-Bey's action does not involve rights under the Fourteenth Amendment.  *See* ECF No. 35-1.

it was due.   ECF No. 36.   The response will be denied as

untimely.[13]

In his motion to vacate the Court's order, Khepera-Bey

argues that Santander "did not provide any lawful link to the

Plaintiff in their . . . affidavit."   ECF No. 33 at 1.   Khepera-

Bey's argument--about whether Santander has proof that it is not

liable to Khepera-Bey--was not relevant to the Court's decision

whether Khepera-Bey had properly alleged the claims in his

complaint.[14]

As the Court will discuss again when it considers

Renaissance's motion to dismiss, below, a motion to dismiss for

failure to state a claim tests the legal sufficiency of a

complaint, but does not "resolve contests surrounding the facts,

---

[13] Khepera-Bey argued in his motion that Santander's motion to
dismiss was filed six days after the answer to his complaint was
due.   ECF No. 36 at 2.   Under Fed. R. Civ. P. 12(a), a defendant
must serve an answer or a motion to dismiss within 21 days after
the defendant is served with the summons and complaint. The
summons lists the "date of service," and the USPS delivery
confirmation notice lists the date of receipt, as May 31, 2011.
ECF No. 9 at 1-2.   A handwritten note states that service was
"accepted" on May 25, 2011; it is not clear why or how service
was accepted before the date of service and delivery.   Id. at 1.
The motion to dismiss or answer was due on June 21, 2011.   See
Fed. R. Civ. P. 12(a).   Santander timely filed its motion on
June 21, 2011.   ECF No. 4.

[14] At this stage in this suit, Khepera-Bey has not "demonstrated
by a preponderance of the evidence" that the contract is
fraudulent.   ECF No. 33 at 5.   The Court assumes that, as the
complaint claims, Santander completed portions of the complaint
that Lanham Ford was meant to complete.   See ECF No. 1.   This
does not mean that Khepera-Bey has proven fraud.

the merits of a claim, or the applicability of defenses."
*Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir.
2006).  The Court assumes that the facts contained in the
complaint are true.[15]  Santander was not required to address the
allegation that the retail installment was fraudulent.  *See* ECF
No. 33 at 2.  Santander challenged the complaint because
Khepera-Bey had not alleged the necessary facts to support one
element of the FDCPA claim--that Santander was a debt collector,
as defined by the statute. An FDCPA claim that does not show
that the FDCPA applies to the defendant must be dismissed.  In
dismissing the complaint and amended complaint the Court has not
ignored the allegedly fraudulent contract.  ECF No. 33 at 5.[16]

Khepera-Bey also argues that he is entitled to reconsider-
ation under Fed. R. Evid. 103.  ECF No. 56 at 1.  Rule 103
applies to preserving a claim of error when the Court admits or

---

[15] However, the Court will not accept the legal conclusions in
the complaint.  When resolving the motion to dismiss, the Court
checks whether the complaint includes every required element for
each claim.

[16] Khepera-Bey states that Renaissance was "trying to take on the
decision making role reserved for" the Court when it argued that
Khepera-Bey's amended complaint mooted his motion to vacate.
ECF No. 44 at 9.  Renaissance did not try to usurp the Court's
role, it merely presented to the Court an argument, an argument
it was entitled to make.  The Court did not consider that
argument because it resolved the motion on other grounds, but
Renaissance did nothing wrong by arguing mootness.
   The defendants also did not usurp the Court's power to set
deadlines.  *See id.*  The Clerk of the Court enters the deadlines
on the docket sheet.  The defendants had no role in creating
those deadlines.

excludes evidence from a proceeding.  The Court has made no evidentiary rulings.  *See* ECF Nos. 28, 29.  Whether Santander committed fraud remains to be proven at the appropriate time, not at the motion to dismiss stage.  *See Presley,* 464 F.3d at 483.

When the Court considered Khepera-Bey's motion for summary judgment, it did not weigh the evidence by concluding that the parties needed to conduct discovery before it could rule on a motion for summary judgment.  ECF No. 28 at 11-12.  Khepera-Bey objects to the Court's consideration of Santander's affidavit, submitted in opposition to his motion for summary judgment.  ECF No. 56 at 1.  He argues that the affidavit "does not exist." *Id.* at 2.  The affidavit, which was originally submitted without signature, was signed and re-submitted.  ECF No. 26-1.  It was sufficient to permit Santander to avoid summary judgment at this early stage of the proceedings.  *See* Fed. R. Civ. P. 56(d).

Khepera-Bey has not shown that the Court's October 6, 2011 order should be reconsidered.[17]  Accordingly, the motion will be denied.

---

[17] Motions for reconsideration of an interlocutory order are governed by Rule 54(b), under which "any order or other decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  When warranted, the district court retains the power to reconsider and modify its interlocutory judgments at any time before final judgment.  *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th

3.    Motion for More Definite Statement

Khepera-Bey moved for a court order requiring Santander to provide more "definitive statements" than it gave in its answer to the amended complaint.  ECF No. 41 at 1.

Under Fed. R. Civ. P. 8(b), an answer to a complaint must "state in short and plain terms its defenses to each claim asserted against it; and admit or deny the allegations asserted against it."

Under Fed. R. Civ. P. 12(e):

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. . . .  If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Cir. 2003).  Resolution of the motion is "committed to the discretion of the district court," *Id.* at 515, and "the goal is to reach the correct judgment under law." *Netscape Commc'n Corp. v. ValueClick, Inc.,* 704 F. Supp. 2d 544, 547 (E.D. Va. 2010) (internal citations omitted).

Under Rule 60(b), a court may grant relief from a judgment or order for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief.  Fed. R. Civ. P. 60(b). Although Rule 60(b) applies only to final judgments, a court may consider the reasons in that rule when deciding whether to grant relief under Rule 54(b); *See Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1470 (4th Cir. 1991); *Mateti v. Activus Fin., LLC*, No. DKC-08-0540, 2009 WL 3633339, *4 (D. Md. Oct. 27, 2009).  When a request for reconsideration merely asks the court to "change its mind," relief is not authorized. *Pritchard v. Wal-Mart Stores, Inc.,* 3 F. App'x 52, 53 (4th Cir. 2001).

13

A motion for more definite statement focuses on whether a party has "enough information to frame an adequate answer." *Streeter v. SSOE Sys.*, No. WMN-09-CV-1022, 2009 WL 3211019, at *10 (D. Md. Sept. 29, 2009) (citation and internal quotation marks omitted). A motion for a more definite statement challenges the intelligibility or ambiguity of the complaint, not whether the allegations state a claim.[18]

Whether to grant a motion for a more definite statement is "generally left to the district court's discretion." *Hodgson v. Va. Baptist Hosp., Inc.*, 482 F.2d 821, 824 (4th Cir. 1973). However, this motion is disfavored because of the liberal pleading standard. *Frederick*, 727 F. Supp. at 1021.

Khepera-Bey's motion fails for two reasons. First, Rule 12(e) applies to "a pleading to which a responsive pleading is allowed." No responsive pleading to an answer is allowed unless the answer includes a counterclaim or the Court orders a reply to the answer. Fed. R. Civ. P. 7(a). Neither circumstance is present here.

Khepera-Bey's motion also fails because Khepera-Bey complains that Santander's use of phrases such as "no response is required" and "the terms speak for themselves" are ambiguous.

---

[18] *Smith v. McGraw*, No. 10-cv-02310-AW, 2011 WL 1599579, at *5 (D. Md. Apr. 27, 2011); *Frederick v. Koziol*, 727 F. Supp. 1019, 1020–21 (E.D. Va. 1990).

14

*See* ECF No. 41 at 2.  "No response is required" to legal conclusions in a complaint; a defendant is only required to respond to factual allegations.  Santander has denied legal conclusions to the extent they were deemed factual allegations. *See* Fed. R. Civ. P. 8(b); ECF No. 32.  That the terms of documents attached to the amended complaint "speak for themselves," ECF No. 32 at 1, is an acceptable response--it means that Santander admits that the attachments contain the information that they appear to contain.  *See United States v. Cunningham*, No. 08-cv-0709, 2009 WL 3350028, at *5 (E.D. Va. Oct. 15, 2009).  Santander's answer satisfied Rule 8(b); accordingly, Khepera-Bey's motion for a more definite statement will be denied.

### 4.   Motion for Discovery

Khepera-Bey also seeks discovery of documents from Santander.  ECF No. 42.  Under Fed. R. Civ. P. 26(d)(1), a "party may not seek discovery from any source before the parties have conferred [and produced a discovery plan]."  Khepera-Bey argues that Rule 26(d)(1) does not apply, because he seeks documents that must be disclosed without request under Rule 26(a)(1).  ECF No. 52 at 2.  However, the parties need not disclose Rule 26(a)(1) information until 14 days after the discovery conference.  Fed. R. Civ. P. 26(a)(1)(C).  Further, "disclosures need not be made until a scheduling order is

entered." Local Rule 104.4 (D. Md. 2011). Accordingly, Khepera-Bey's motion is premature and will be denied.

     5.   Motions "Evidencing" Fraud and Forgery

    Khepera-Bey filed four motions "evidencing" Santander's alleged fraud and the invalidity of the loan contract. ECF Nos. 37-39, 61. The motions include arguments and documents that Khepera-Bey believes support his claims. *See id.* A motion is a "request for a court order." Fed. R. Civ. P. 7(b). It must state the relief it seeks from the Court. *Id.* Khepera-Bey's "motions" request that the Court grant them but do not specify the relief he wants. *See* ECF Nos. 37-39, 61. It appears that Khepera-Bey wants the Court to make a factual finding that the retail installment contract was fraudulent, and conclude as a matter of law that the defendants are liable. *See* ECF No. 37 at 4; ECF No. 38 at 14.

    To the extent Khepera-Bey seeks a factual determination, he is too early. As the Court noted in its October Memorandum Opinion, the Court will not rule on disputes of material fact, such as the validity of the contract, before the completion of court-ordered discovery. ECF No. 29 at 6-7. After discovery concludes, Khepera-Bey--or the defendants--may move for summary judgment. The motions "evidencing" facts will be denied.

6.    Motions for Default Judgment

Khepera-Bey filed two motions for default judgment and two motions in support of his motions for default judgment.  ECF Nos. 59, 60, 63, 67.  He argues that the defendants have failed to defend or appear in the action because some of the defendants' filings are addressed to Kheval Stewart, and Khepera-Bey does not respond to that name, or Khevil Stewart, a misspelling of his former name.  *Id.*

Under Fed. R. Civ. P. 55, a district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear.  Fed. R. Civ. P. 55(b)(2).[19]  The Fourth Circuit strongly prefers that cases be decided on their merits, not by default judgment.  *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993).[20]

---

[19] If it found that the defendants had defaulted, the Court would accept as true the well-pled facts in the plaintiff's complaint, "but [even] a defaulting defendant is not held to admit conclusions of law."  *United States v. $3,500.00 in U.S. Currency*, 2008 WL 215807, at *1 (E.D.N.C. Jan. 24, 2008) (*citing Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)).  Rather, it remains for the Court to determine whether the unchallenged factual allegations "support a claim and the relief sought."  *Id.*

[20] A plaintiff cannot obtain default judgment without first obtaining an entry of default against the defendant.  *Husain v. Casino Control Comm'n*, 265 F. App'x 130, 133 (3d Cir. 2008) ("entry of default by the Clerk . . . constitutes a general prerequisite for a subsequent default judgment"); *Romero v. Barnett*, No. 09-2371-DKC, 2011 WL 1938147, *2 (D. Md. May 20, 2011).

17

Further, the defendants' failure to use Khepera-Bey's new name, and minor misspellings are not a failure to defend this lawsuit. The defendants filed responses to Khepera-Bey's complaint and motions, which the Clerk properly docketed, and Khepera-Bey received.[21]  Khepera-Bey also argues that he is entitled to default judgment because Santander did not timely answer the complaint. ECF No. 59 at 2-3. As discussed above, that argument lacks merit.[22]

Khepera-Bey also seeks default judgment against Santander under Fed. R. Civ. P. 37(b)(2)(A)(vi) for its failure to provide discovery material. ECF No. 59 at 2. Rule 37(b) applies when a party fails to comply with a court order compelling discovery. Fed. R. Civ. P. 37(a)(1). Rule 37(c), on which Santander also

---

[21] *Cf. Miller v. Balt. City Bd. of School Comm'rs*, No. 10-2038-WDQ, 2011 WL 2600589, *5 (D. Md. Jun. 28, 2011) (a defendant cannot obtain dismissal for improper service only because the process served on him misspelled his name; he received actual notice of the action and maintaining the action would not be prejudicial). Here, Khepera-Bey received the defendants' filings.  He will not be prejudiced by minor spelling errors or the use of Khepera-Bey's legal name when he first filed his action.

Fed. R. Civ. P. 17 is also not helpful for Khepera-Bey, as it applies to prosecution of an action, and Renaissance and Santander are defending this action.

[22] As a third ground for granting default judgment against Santander, Khepera-Bey states that "the defendant informed the Court that they have no evidentiary support . . . to prove their claims and defenses." ECF No. 59 at 3.  Santander has made no such admission.  Default judgment does not consider the evidence supporting a claim.  *Schaffer Equip. Co.*, 11 F.3d at 453.

relies, applies only when a party fails to disclose information it has a duty to provide.  As discussed above, discovery has not begun in this case, the Court has issued no orders compelling discovery, and Santander is not yet required to provide Rule 26(a) disclosures to Khepera-Bey.  Accordingly, the motion will be denied.

> 7.   Motion to Transfer to "De Jure Venue of Law"

Khepera-Bey asks the Court to

> transfer his case to [its] De Jure venue of LAW within the . . . Court . . . and hereby gives Judicial Notice to terminate, prohibit any further adjudication in the . . . [action] in any de facto commercial, juridicial venue.

ECF No. 68 at 1 (emphasis omitted).  He also states that his complaint "should now be adjudicated in accord with the Moor Sundry Act of 1790 and not under the Black Codes or any artificial persona."  *Id.*

The United States District Courts handle all matters of law and equity, in the same venue.  *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011) (noting the merger of law and equity courts).  Accordingly, the action is pending in a court of law.

Khepera-Bey asks for adjudication under "the Moor Sundry Act of 1790, and not under the Black Codes."  He did not identify what the that act was, but the Moors Sundry Act of 1790 appears to be a South Carolina law granting special immunity from "Black Codes" to South Carolina residents who were subjects

19

of the Sultan of Morocco.[23]  The Civil Rights Act of 1964
eliminated discriminatory laws like the "Black Codes."[24]
Further, Khepera-Bey has not alleged that he is a subject of the
Sultan of Morocco, this action is premised on federal question
jurisdiction, and no acts occurred in South Carolina; the
statute is irrelevant.[25]  The motion will be denied.

      B.   Renaissance's Motion to Dismiss and Khepera-Bey's
           Motion to Amend

        1.   Standards of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed
for failure to state a claim upon which relief can be granted.
Rule 12(b)(6) tests the legal sufficiency of a complaint, but
does not "resolve contests surrounding the facts, the merits of
a claim, or the applicability of defenses." *Presley,* 464 F.3d
at 483.

The Court bears in mind that Rule 8(a)(2) requires only a
"short and plain statement of the claim showing that the pleader

---

[23] Presumably because of its age and irrelevance in light of the
Civil Rights Act of 1964, very little information about the Act
is available.  The most informative source, it appears, is
Wikipedia.  *See* Moors Sundry Act of 1790, *available at*
http://en.wikipedia.org/wiki/Moors_Sundry_Act_of_1790, accessed
Mar. 23, 2012.

[24] *McCrary v. Runyon*, 515 F.2d 1082, 1093-94 (4th Cir. 1975)
(Russell, Field, and Widener, JJ., dissenting in part).

[25] To the extent Khepera-Bey relies on the laws of the Moorish
Science Temple, those laws are not "recognized by United States
federal courts as binding legal authority." *De Bey*, 2012 WL
176586, *4.

is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Twombly,* 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

Under Fed. R. Civ. P. 15(a), the Plaintiff may amend his complaint more than 21 days after a Fed. R. Civ. P. 12(b) motion only if the opposing party gives written consent, or the Court permits the amendment. The Court will allow amendment when

justice requires, and may consider such factors as prejudice to
the other parties. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202-03
(3rd Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182
(1962)). Consent will not be given if amendment would be
prejudicial to the defendants or futile, or the movant acted in
bad faith with dilatory motive. *Equal Rights Ctr. v. Niles
Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). The Court
will determine futility under the standard of Fed. R. Civ. P.
12(b)(6). *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122,
126 (1st Cir. 2006).

      2.    Dismissal of Meritless Claims

    Khepera-Bey requested, and was granted, permission to
proceed *in forma pauperis* ("IFP") under 28 U.S.C. § 1915. ECF
Nos. 2, 3. Under 28 U.S.C. § 1915(e)(2), the Court "shall
dismiss the case at any time if [it] determines that . . . the
action . . . is frivolous [or] . . . fails to state a claim on
which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii)-
(iii). Accordingly, the motion to amend will be considered in
light of the Court's duty to dismiss meritless or frivolous
claims.[26]

---

[26] The Court's scrutiny does not mean that the permitted
amendments necessarily state a claim for which relief may be
granted. The Court will not do the work of the parties in
arguing closer questions than those dismissed *sua sponte* here.

3.    Khepera-Bey's Motion to Amend

Khepera-Bey seeks to file a second amended complaint to add
state law claims and, he argues, remove allegations of criminal
violations.  ECF No. 35 at 3.  The second amended complaint is
replete with allegations of criminal violations.  *See* ECF No.
35-1, Counts 3-14.[27]  The criminal allegations do not state a
civil claim for which relief may be granted because they do not
provide a private cause of action; those amendments will not be
allowed.

Several of the statutory Maryland claims are subject to
dismissal as well.[28]  Many of the statutes on which Khepera-Bey

---

[27] The criminal statutes cited, are: 18 U.S.C. §§ 641, 892, 894,
1028, 1341, 1343, 1951, 1952.
    Khepera-Bey argues that the second amended complaint raised
a claim under 18 U.S.C. § 1964, which authorizes a civil cause
of action under the Racketeer Influenced and Corrupt Organiza-
tions ("RICO") laws.  ECF No. 55 at 1.  He correctly notes that
a person injured by a violation of 18 U.S.C. § 1962 may sue for
damages.  *Id.* at 1-2; 18 U.S.C. § 1964(c).  However, Khepera-Bey
did not rely on 18 U.S.C. § 1964 or § 1962 in his second amended
complaint or state a civil RICO claim.  *See* ECF No. 35-1.

[28] The new, non-criminal claims are based on Maryland statutory
and common law torts.  *See* Counts 1-15.  Accordingly, those
claims are not within Federal Question jurisdiction.  Santander
"is incorporated as a citizen of Maryland."  ECF No. 35-1 ¶2.
Accordingly, it is not diverse from Khepera-Bey, also a Maryland
resident.  Jurisdiction over the Maryland law claims thus
requires supplemental jurisdiction.  The Court has supplemental
jurisdiction because the claims "form part of the same case or
controversy" as the FDCPA claims.  28 U.S.C. § 1367.

relies do not provide private causes of action.[29]  Others do not
apply to the facts alleged.[30]  Some of the remaining amendments
will be permitted, as discussed below.

      4.   Renaissance's Motion to Dismiss

The Court will consider Renaissance's motion to dismiss as
if it were directed at the proposed second amended complaint.[31]
As noted above, Khepera-Bey will not be permitted to amend his
complaint to add allegations of crimes or inapplicable Maryland
laws.  Counts 10, 12, 13, and 14 name Renaissance and state--
after the criminal and clearly inapplicable claims are removed--
FDCPA, Maryland Consumer Debt Collection Act ("MCDCA"), Maryland
Consumer Protection Act ("MCPA"), Closed End Credit, and common
law causes of action.  ECF No. 35-1 at 30-43.

---

[29] Those statutes are: Md. Code, Comm. Law §§ 9-107, 9-303, 9-329; Md. Code, Transp. §§ 13-114(e), 14-108; Md. Dep't of Transp. Regulation 11.15.14.07.

[30] Those statutes are: Md. Code, Comm. Law:
- § 5-109(b) (applies when honoring a presentation on a letter of credit would facilitate a fraud by the beneficiary; Khepera-Bey is the beneficiary, he does not allege that Santander would cause Khepera-Bey to commit fraud);
- §§ 5-112 and 5-114 (limit the beneficiary's rights to transfer and assign rights and obligations under a letter of credit); and
- § 12-602 (prohibits a seller or financier from making false representations related to charges, rates, and terms of financing).

[31] *See Baldwin v. LIJ N. Shore Health Sys.*, 392 F. Supp. 2d 479, 481-82 (E.D.N.Y. 2005) (court may treat motions as directed at proposed amended complaints to promote judicial efficiency if fair to the parties); *Levy v. Lerner*, 853 F. Supp. 636, 638 (E.D.N.Y. 1994).

a.    FDCPA Claims

Khepera-Bey argued that Santander and Renaissance violated § 1692f(6)(A) and (C) when Santander sent him a notice of intent to repossess, Renaissance repossessed the car, Santander told him it would sell the car unless Khepera-Bey paid his remaining debt and costs, personal property disappeared from the car while it was in Santander's and Renaissance's possession, and Santander obtained a title to the car.   ECF No. 35-1 at 20, 30-31, 37-38, 42, 45-46.

To state a claim under the FDCPA, a plaintiff must show that the defendants are debt collectors.   *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378 (4th Cir. 2006).   The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce . . .  in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6).   It excludes repossession agencies, except for violations of 15 U.S.C. § 1692f(6).[32]   *See Wilson*, 443 F.3d at 378.   Because Khepera-Bey alleged that Renaissance's only role was as a repossessor, not a debt collector, the FDCPA claims against it will be dismissed, except for the § 1692f(6) claim.

---

[32] Which prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property" if the debt collector lacks the right or intent to take the property as collateral through an enforceable security interest.   15 U.S.C. § 1692f(6).

Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect . . . any debt."  Section 1692f(6) prohibits "[t]aking or threatening to take any nonjudicial action" to repossess property if (A) there is no present right to possess the property, or (C) the property is exempt by law from repossession.

Khepera-Bey has not alleged that his car was exempt by law from repossession, and the Court has found no authority for that proposition.  Subsection (C) does not apply.

The letter of intent to repossess and the repossession are proper bases for § 1692f(6)(A) claims.  The other allegations are either components of the repossession--such as endeavoring to gain title in Santander's name--or do not relate to the right to repossess--such as the lost property.  However, Khepera-Bey alleged that Santander did not have the right to repossess the car because it had not verified the debt and the underlying contract was invalid.  ECF No. 31-1 at 8-9, 11, 13. Accordingly, one § 1692f(6)(A) claim against Renaissance will survive the motion to dismiss.  The § 1692f(6)(C) claim will be dismissed.

b.   Maryland Consumer Debt Collection Act Claims

Khepera-Bey asserts that Renaissance violated the MCDCA, Md. Code, Comm. Law § 14-202.  The MCDCA prohibits debt collectors from using threatening or unfair methods "[i]n

collecting or attempting to collect an alleged debt."   Md. Code,
Comm. Law § 14-202; *Spencer v. Henderson-Webb, Inc.*, 81 F. Supp.
2d 582, 594 (D. Md. 1999).   Like the FDCPA, the MCDCA only
applies to "collectors"; a collector is "a person collecting or
attempting to collect an alleged debt arising out of a consumer
transaction."   Md. Code, Comm. Law § 14-201(b).   A recovery
company, which enforces a collector's security interests, is not
a debt collector because enforcing a security interest is not
collecting a debt, and the recovery company generally does not
have an interest in the debt (or the personal property; it is
acting on behalf of the collector or creditor).[33]

Accordingly, Khepera-Bey's MCDCA claims against Renaissance
will be dismissed.

---

[33] There is no authority directly considering whether a
repossession agency is a "collector" in Maryland, and the
Maryland Code does not define "debt."   However, the Commercial
Law section of the Maryland Code defines "security interest" as
"an interest in personal property . . . which secures payment or
performance of an obligation."   Md. Code, Comm. Law § 1-201(37)
(general definitions).   Thus, the definition distinguishes the
interest in personal property from the obligation to pay.   *Id.*
Further, a repossessor cannot be said to be attempting to
collect a debt when it takes property; it has no right to
collect the debt, and has been hired only to physically take,
store, or sell the property on behalf of the collector.   *See
Green v. Ford Motor Credit Co.*, 828 A.2d 821, 825 (Md. Ct. Spec.
App. 2003) (noting that defendant, a collector, "use[s] the
services of [a repossessor] for the repossession, storage and
sale of cars repossessed by [the defendant]," and thus implying
that the repossessor is not a collector).

          c.    Maryland Closed End Credit Provisions

Count 12 alleges that Santander's collection efforts, and Renaissance's repossession, were unlawful.  ECF No. 35-1 at 37-39.  Khepera-Bey asserts that Renaissance violated Md. Code, Comm. Law § 12-1021, part of the Credit Grantor Closed End Credit provisions ("CLEC").  The CLEC regulates credit grantors. Md. Code, Comm. Law § 12-1018.  A credit grantor is an "entity making a loan or other extension of credit."  *Id.* § 12-1001(g).[34]

Khepera-Bey's allegations show that Renaissance was not a credit grantor.  Thus, the CLEC does not apply to Renaissance. The CLEC claims against Renaissance will be dismissed.

          d.    Retail Installment Sales Act

Khepera-Bey alleged, in count 12, that Renaissance and Santander violated the Retail Installment Sales Act ("RISA"), Md. Code, Comm. Law § 12-601 *et seq*.  ECF No. 35-1 at 38-39.  He alleged violations of Md. Code, Comm. Law §§ 12-624(d), -625(a), -626(d), and -630(d).[35]  *Id.*

---

[34] *See also Epps v. JP Morgan Chase Bank, N.A.*, No. 10-2444, 2012 WL 1134065, *8 (4th Cir. April 5, 2012) ("[T]he CLEC applies to any lender in Maryland.").

[35] Section 12-630 lists remedies for violations of the RISA.  Md. Code, Comm. Law § 12-630.  Renaissance cannot have "violated" it, but Khepera-Bey will not be faulted for noting the statute that delineates his potential remedies.

Section 12-624(d) states that a holder[36] must, within five days of repossessing goods sold under a RIC, send the buyer a written notice that tells the buyer (1) about his right to redeem the goods and how much he needs to pay to do so, (2) about his right to a resale and liability for a deficiency, and (3) the exact location of the collateral and the address where payment or notice should be made. Md. Code, Comm. Law § 12-624(d).

Khepera-Bey's allegations make clear that he contends Santander, not Renaissance, violated § 12-624(d). *See* ECF No. 35-1 at 37. Aside from repossessing the car and moving it across county lines, count 12 does not mention Renaissance, but it states that "Santander['s] notice [of intent] to sell" violated Maryland law. *Id.* Accordingly, Khepera-Bey did not allege that Renaissance violated § 12-624(d). To the extent that claim is directed against Renaissance, it will be dismissed. Section 12-625(a) states that the holder must retain the repossessed goods for 15 days after giving the buyer notice of repossession, in the county where goods were sold or repossessed.

Khepera-Bey alleged that he bought the car in Lanham, Maryland--in Prince George's County--Renaissance and Santander

---

[36] A holder is an entity entitled to enforce an installment sales agreement against a buyer. Md. Code, Comm. Law § 12-601(1).

repossessed the car in Baltimore, Maryland, and moved it to Elkridge, Maryland--which is in Howard County.  ECF No. 35-1 at 37.  Accordingly, he has alleged that Santander and Renaissance held the car in the wrong county, in violation of § 12-625(a).

Section 12-626(d) states that the holder must notify the buyer in writing of the time and place of a sale at least 10 days before the sale, if the buyer has requested a public sale. Md. Code Comm. Law § 12-626(d).[37]  Khepera-Bey did not ask Renaissance to sell the car; § 12-626 does not apply to the transaction.  That claim will be dismissed.

        e.    Maryland Consumer Protection Act Claims

The MCPA prohibits the use of unfair or deceptive trade practices in the sale of goods, extension of credit, and collection of consumer debts, among other things.  Md. Code, Comm. Law § 13-303.

---

[37] Subsection (d) is limited by subsection (a), which states that "the holder shall sell any repossessed goods at public auction if the buyer . . . [timely] requests sale of the goods in writing."  *See* Md. Code, Comm. Law § 12-626(e)(1)(noting that subsection (e) applies to "[a] public sale held under the provisions of this section [§ 12-626]" *and* "[a]ny other bona fide public or private sale of goods . . . if the buyer . . . has not requested a public sale under subsection (a) of this section"; thus implying that the other provisions of "this section" only apply when (a) applies).  Accordingly, subsection (d) does not apply when the buyer has not requested a sale.

Khepera-Bey alleged that Renaissance violated subsections one through four, eight, nine, and eleven.[38]   ECF No. 35-1 at 38.

---

[38] Those subsections state that "Unfair or deceptive trade practices include any:

(1)   False, falsely disparaging, or misleading . . . statement . . . which has the capacity . . . of deceiving or misleading consumers;

(2)   Representation that:
    (i)   Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic . . . or quantity which they do not have; [or]
    (ii) A merchant has a sponsorship, approval, status, affiliation, or connection which he does not have; . .
    .

(3)   Failure to state a material fact if the failure tends to deceive;

(4)   Disparagement of the goods . . . of another by a false or misleading representation of a material fact;
. . .
(8)   False statement which concerns the reason for offering or supplying consumer goods, consumer realty, or consumer services at sale or discount prices;

(9)   Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:
    (i) The promotion or sale of any consumer goods, consumer realty, or consumer service;
    (ii) A contract or other agreement for the evaluation, perfection, marketing, brokering or promotion of an invention; or
    (iii) The subsequent performance of a merchant with respect to an agreement of sale, lease, or rental;
    [or]

(11) Use of any plan or scheme in soliciting sales or services over the telephone that misrepresents the solicitor's true status or mission.

31

He has not alleged that Renaissance engaged in any of the deceptive acts listed in those subsections. *See id.* His MCPA claim against Renaissance will be dismissed.

     d. Common Law Claims

   Finally, Khepera-Bey alleged in counts 10 and 12 that Renaissance is liable for slander, trespass, trespass to chattel, and "trespass to personal property with conversion (strict liability)." ECF No. 35-1 at 31, 38-39.

   To plead a defamation[39] claim, the plaintiff must allege

> (1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm.

*Piscatelli v. Van Smith*, 424 Md. 294, 306, 35 A.3d 1140, 1147 (2012) (internal quotation marks and citations omitted).

   A statement is defamatory if it "tends to expose a person to public scorn, hatred, contempt, or ridicule." *Id.* (internal quotation marks and citations omitted). A false statement "is not substantially correct." *Id.* Harm can include emotional distress, but only if "there is a publication of false and defamatory matter from which harm to reputation is presumed"-- defamation per se. *Hearst Corp. v. Hughes*, 297 Md. 112, 127, 466 A.2d 486, 493 (1983).

---

[39] Slander is a type of defamation. *See Piscatelli v. Van Smith*, 424 Md. 294, 317, 35 A.3d 1140, 1153-54 (2012).

Statements that impute: (1) the commission of a crime, (2) unchastity or immorality, (3) injury to profession, trade, or business, or (4) injury to employment, are defamatory per se. 14 Md. Law Encyc. Libel & Slander §§ 6-13. A statement that the plaintiff cannot pay his debts, or is insolvent, is not defamatory per se unless the plaintiff shows that he is engaged in a business that requires credit. *Ekweani v. Atl. City Emps. Credit Union*, 43 F.3d 1466 (table), 1994 WL 696519, *2 (4th Cir. 1994) (applying Georgia law).[40]

Khepera-Bey alleged that: (1) Renaissance's employee accused him, in front of neighbors, of failing to pay his bills; (2) he was not required to pay his car payments because the debt was disputed, the contract was invalid, and Santander had not properly acquired the RIC; and (3) Renaissance willfully ignored evidence that Khepera-Bey was not required to pay the debt; and (4) he was embarrassed and upset by the statement. ECF No. 35-1 at 32. As a statement imputing inability to pay debts requires proof of monetary, rather than emotional, harm, Khepera-Bey has not stated a claim for defamation.[41]

---

[40] Maryland does not appear to have addressed the issue directly, but has implied that it follows this rule. *See, e.g.*, *Gooch v. Md. Mech. Sys., Inc.*, 567 A.2d 954, 966 (Md. Ct. Spec. App. 1990) ("To say or publish of a *merchant* anything that imputes insolvency [or] inability to pay his debts" is defamatory per se. (emphasis added)).

[41] Nor has Khepera-Bey alleged severe emotional distress as a result of the statement. He alleged that he was "emotionally

Khepera-Bey has stated a claim for trespass because he alleged that Renaissance's employee voluntarily entered Khepera-Bey's driveway without his consent and stayed without a privilege. *Mitchell v. Balt. Sun Co.*, 883 A.2d 1008, 1014 (Md. Ct. Spec. App. 2005).

Khepera-Bey's trespass to chattel claim will survive, construed as a conversion claim, as he alleged that Renaissance "exercised . . . a control or dominion over[] personal property to which [it] ha[d] no right of possession at the time," depriving Khepera-Bey of his right to the car. *Gallardo v. FedEx Kinko's Office & Print Servs., Inc.*, No. 08-0392-JFM. 2008 WL 2143011, *3 (D. Md. May 12, 2008); *Staub v. Staub*, 376 A.2d 1129, 1131 (Md. Ct. Spec. App. 1977).

There is no tort of "trespass to personal property with conversion (strict liability)" in Maryland. That claim will be dismissed.

        4.  Remaining Claims

The remaining claims are:

---

stressed" and that the loss of his car affected his daily activities, but not that the statement so severely distressed him that "he has been unable to attend to his daily activities or that no person would be expected to endure such a situation," or physical complications, which would be necessary to establish severe emotional distress. *See Figueiredo-Torres v. Nickel*, 321 Md. 642, 655-56, 584 A.2d 69, 76 (1991).

| Claim | Against | "Count" |
|---|---|---|
| **FDCPA:** | | |
| 1692c | Santander | II |
| 1692e | Santander | I, II, III, IV, IX, XI, XII, XV |
| 1692f(1) | Santander | I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV |
| 1692f(6) | Santander, Renaissance | VI (Santander only), X, XII, XIV, XV |
| 1692g | Santander | I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV |
| 1692j | Santander | I, II, III, IV, V, VI, VII, VIII, IX, XI, XII, XIV, XV |
| MCDCA: Md. Code, Comm. Law § 14-202 | Santander | I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV |
| 18 U.S.C. § 1666 | Santander | IV, V |
| 18 U.S.C. § 1666a | Santander | XI |
| **RISA:** | | |
| §§ 12-605 to 607 | Santander | VIII, XI, XII |
| §§ 12-624 to 630 | Santander, Renaissance | XII |
| CLEC: § 12-1021 | Santander | XII |
| MCPA: §§ 13-301 to 303 | Santander, Renaissance | XII, XV (Santander only) |
| **FCRA:** | | |
| 15 U.S.C. § 1681s-2 | Santander | XI |
| 15 U.S.C. § 1681m | Santander | XI |
| 15 U.S.C. § 1681b | Santander | XI |
| 15 U.S.C. § 1681q | Santander | XI |
| Slander/Defamation | Santander, Renaissance | X, XI (Santander only) |
| Conversion | Santander, Renaissance | X |
| Trespass | Santander, Renaissance | X, XII |

C.   Progression of the Case

Khepera-Bey's motions have prevented the timely progression of this case. He is instructed that the defendants need not

provide him with discovery until the Court sets a discovery schedule.

Khepera-Bey should keep in mind that, if he succeeds on his claim that the RIC was invalid when it was made, he may have to return the car (because he no longer has a purchase contract for it), and pay for the value of using the car for the past seven years (but his total car payments to date may offset that amount). That transaction would not prevent him from recovering statutory or other damages if he succeeds on his FDCPA, FCRA, MCDCA, and common law claims.

III. Conclusion

For the reasons stated above, Khepera-Bey's motion to file a second amended complaint will be granted in part and denied in part. His other motions will be denied. Renaissance's motion to dismiss the second amended complaint will be granted in part and denied in part.

_5/29/12_
Date

William D. Quarles, Jr.
United States District Judge