IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|   |   |
|---|---|
| KALLIATEN SEKHNEB KHEPERA-BEY *formerly known as Khaval Stewart* | * |
| Plaintiff/Counter-defendant, | * |
| v. | * CIVIL NO.: WDQ-11-1269 |
| SANTANDER CONSUMER USA, INC., | * |
| Defendant/Counter-plaintiff. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Defendant Santander Consumer USA, Inc. ("Santander") counterclaimed against *pro se* plaintiff KalliAten SekhNeb Khepera-Bey for damages and possession of a 2003 Nissan Pathfinder (the "Vehicle"). Pending is Santander's unopposed motion for a temporary restraining order ("TRO") and preliminary injunction to restrain Khepera-Bey from conveying title to the Vehicle or removing it from Maryland. For the following reasons, the motion will be granted in part, and a TRO will be entered.

I. Background[1]

   A. Factual Background

On August 10, 2006, Khepera-Bey purchased the Vehicle from Lanham Ford. ECF No. 98-3. Khepera-Bey executed a retail installment sales contract ("RIC") to finance $18,324.13 toward the purchase of the vehicle. See RIC. The RIC, signed by Lanham Ford, indicated that it was going to be assigned to "DC FIN SVCS AMER LLC", i.e. Daimler Chrysler Financial Services Americas, LLC ("DC Financial Services"). Id. The RIC provided the right "without the use of force or other breach of the peace . . . lawfully [to] repossess (take back) the vehicle" upon default--defined as failure to make a payment when due or abide by the terms of the RIC. See id. ¶ 12.

On September 22, 2006, DC Financial Services assigned the RIC to CitiFinancial Auto Corporation ("CitiFinancial").[2] ECF Nos. 98-2 ¶ 7, 98-11 ¶ 9. Khepera-Bey made some payments to

---

[1] The facts are primarily from the exhibits to Santander's unopposed summary judgment motion, principally the affidavits of Renee D. Woods, Vice President of Risk Management for CitiFinancial Auto Corporation, and Mark Mooney, Santander's Vice President of Loss Recovery.

[2] The assignment was pursuant to Auto Finance Alliance Program Agreement under which CitiFinancial's predecessor in interest (TranSouth Financial Corporation) "purchased retail installment sale contracts from DaimlerChrysler Services North America LLC" (DC Financial Services's predecessor in interest). ECF No. 98-11 ¶ 5. "The Auto Finance Alliance Program Agreement was amended several times between the years 2004 and 2007." Id. ¶ 6.

CitiFinancial, but at least seven payments were deferred at his request. ECF No. 98-2 ¶ 8.

On June 23, 2010, CitiFinancial and Santander executed a Master Servicing Agreement authorizing Santander to act as CitiFinancial's agent and requiring Santander "to manage, service, administer, and make collections on the loans." ECF Nos. 98-2 ¶¶ 9-10, 98-4. On September 6, 2010, Santander sent Khepera-Bey a welcome letter informing him that it was now servicer of the loan. ECF No. 98-5. On October 4, 2010, Santander sent Khepera-Bey an account summary that indicated he was 39 days delinquent because he had not made payments due August 25 or September 25, 2010. ECF No. 98-2 ¶ 17. On October 10, 2010, Khepera-Bey made a payment of $405.27; this did not make his account current. Id. ¶ 18.

On November 14, 2010, Santander sent Khepera-Bey a notice of intent to repossess the Vehicle because of his missed payments. ECF No. 98-7. On December 2, 2010, Khepera-Bey filed a complaint with the Maryland Department of Labor, Licensing, and Registration, ("DLLR") alleging that Santander was engaging in improper collection practices. On January 3, 2011, Renaissance Recovery Solutions, LLC ("Renaissance") repossessed the Vehicle for Santander. ECF No. 98-2 ¶ 28. After DLLR "advocated on behalf of" Khepera-Bey, by January 31, 2011 letter, Santander agreed to release the vehicle, and stressed to

3

the DLLR the importance of Khepera-Bey's payment of his loan. ECF No. 98-10.

On October 1, 2011, CitiFinancial assigned all rights under the RIC to Santander. ECF No. 98-2 ¶ 31. As of December 10, 2012, Khepera-Bey owed Santander $17,596.57 consisting of: $12,672.17 principal, $4,240.91 interest, $683.50 fees, and $2,536.96 legal fees.[3] *Id.* ¶ 35. It appears that neither CitiFinancial or Santander ever filed notice of its interests in the Vehicle.

B.   Procedural History in this Court

On May 6, 2011, Khepera-Bey filed suit against Renaissance and Santander for debt collection violations. ECF No. 1. With the complaint, he filed a motion to proceed *in forma pauperis* showing no assets or income. ECF No. 2. Over the course of the litigation, Khepera-Bey filed numerous frivolous motions. *See generally* ECF No. 74 (memorandum opinion discussing then-pending motions). After the resolution of numerous pending motions, on June 2, 2012, Santander answered and counterclaimed for damages on the RIC and possession of the vehicle. ECF No. 76. Khepera-Bey has not answered the counterclaim.

---

[3] Mooney acknowledges that the legal fees are capped at 15% of the unpaid balance under the RIC and states that Santander's legal fees "have far exceeded this limited balance." ECF No. 98-2 ¶ 35 & n.1; *see* RIC ¶ 12.

4

On August 17, 2012, Khepera-Bey filed what purported to be a "notice of removal" to the Moorish Supreme Court of Equity and Truth (the "Moorish Court"). ECF No. 81 (STRICKEN); see also ECF No. 82 (STRICKEN) (discussing "points and authority"). On November 26, 2012, Khepera-Bey filed a document from the Moorish Court purporting to be a "judgment" against Santander for $30,000,000 and Renaissance for $5,000,000 that bore some indicia of this Court. ECF No. 90 (STRICKEN).

On January 10, 2013, the Court struck from the record Khepera-Bey's documents about the "removal" and "judgment," and enjoined Khepera-Bey from attempting to enroll the "judgment" in any court. ECF No. 97. On January 15, 2013, Santander moved for summary judgment on all claims. ECF No. 98. On February 28, 2013, the Court adopted Magistrate Judge Timothy J. Sullivan's report and recommendation and dismissed with prejudice Khepera-Bey's complaint for discovery violations and abuse of the judicial system. ECF No. 103.

On March 8, 2013, Khepera-Bey filed a "notice of appeal" to the Moorish Court. ECF No. 104. This Court transferred the record to the U.S. Court of Appeals for the Fourth Circuit. See ECF No. 106. On May 13, 2013, the Fourth Circuit dismissed the appeal for failure to prosecute. ECF No. 107.

C. The Administrative Decision and the Pending Motion

It appears that Khepera-Bey filed several complaints and requests to invalidate DC Financial Service's lien with the Maryland Motor Vehicle Administration ("MVA"). ECF No. 114. On January 16, 2013, the MVA requested a hearing. See ECF No. 110-2 at 5.

On March 13, 2013, Administrative Law Judge ("ALJ") Sondra L. Spencer conducted a hearing. Id. Assistant Attorney General Leight Collins appeared for the MVA. Id. at 5-6. Neither Khepera-Bey, who objected to the hearing, nor DC Financial Services appeared. Id. at 6; ECF No. 114.

ALJ Spencer framed the issue as "[s]hould the lien held by Respondent [DC Financial Services] be released by the MVA pursuant to section 13-205(d)[4] of the Transportation article?" Id. She consulted numerous documents; those relevant to this case included (1) a March 30, 2011 Statement of No Interest by DC Financial Services, (2) Application for Certificate of Title, (3) Khepera-Bey's complaint, (4) Registry of Motor Vehicles –

---

[4] Section 13-205(d) reads:
(1) If, after notice to all interested parties and a hearing, the Administration determines that an indebtedness does not constitute a security interest, it shall:
  (i) Release the indebtedness on the certificate of title; or
  (ii) Issue a new certificate of title and deliver the certificate to the owner.
(2) Any person aggrieved by the decision of the Administration may appeal in accordance with the provisions of the Administrative Procedure Act.

6

Lienholder List, (5) CitiFinancial Limited Power of Attorney, (6) Maryland Notice of Security Interest Filing, and (7) Santander Consumer Power of Attorney, all of which apparently came from the MVA. ECF No. 110-2 at 6-7.

ALJ Spencer made six findings of fact:

1. On August 10, 2006, Respondent Khepera-Bey purchased the Vehicle from Lanham Ford.

2. At the time of the purchase, the lienholder was Respondent [DC Financial Services].

3. Respondent [DC Financial Services] did not assign its interest in the Vehicle to another lienholder.

4. On or about March 30, 2011, Respondent [DC Financial Services] notified the MVA that it no longer held any security interest or claim of rights to the Vehicle.

5. The MVA did not accept Respondent's [DC Financial Services]'s statement of no interest because it was not written on letterhead. Respondent's [DC Financial Services]'s name, address and phone number [were] printed in the bottom right hand corner of the letter.

6. Respondent [DC Financial Services has no interest in the Vehicle and the lien should be released.

ECF No. 110-2 at 7. Perplexed by the MVA's failure to process DC Financial Services' statement of no interest, ALJ Spencer ordered the lien released. *Id.* at 8. Believing that there was no other lien, despite having considered evidence of CitiFinancial's and Santander's powers of attorney, she ordered a new title issued to Khepera-Bey free of DC Financial Service's lien. *Id.* at 9. On June 6, 2013, the decision was mailed. *Id.* It appears that Santander was not involved in the hearing. The

7

time for an appeal from the hearing has not expired. *See* Md. Rule 7-203(a) (granting 30 days for appeal).

On June 10 and 11, 2013, Khepera-Bey emailed the ALJ's opinion and order to counsel for Santander and Renaissance. ECF No. 11903 at 4-5. On June 13, 2013, Khepera-Bey's free and clear title was issued. *Id.* at 7. Although Khepera-Bey's emails indicate that "the suit"[5] is going to be reopened, he has not filed any new documents. *See, e.g.*, ECF No. 110-3 at 5.

On June 18, 2013, Santander filed the instant motion for TRO. Santander's counsel has declared that they attempted to provide Khepera-Bey with notice and to schedule a time for a hearing by mail, phone, and email, but he has not acknowledged the communication. ECF No. 113.

II. Analysis

Fed. R. Civ. P. 65(b)(1) permits issuance of a temporary restraining order without notice if "specific facts in an affidavit of a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

The affidavits filed in this case--especially in light of Khepera-Bey's litigation history--show the risk of irreparable

---

[5] It is unclear to what case Khepera-Bey referred.

harm and why notice will not be required. *See infra*, Part II.B. Counsel for Santander have attempted to provide notice to Khepera-Bey, who has not acknowledged receipt. ECF No. 113. In light of Khepera-Bey's past behavior, Santander is entitled to proceed on a TRO without notice.

To be entitled to a TRO, the movant must demonstrate that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities favors it; and (4) an injunction is in the public interest.[6] The movant must show more than a "grave or serious question for litigation"; instead, it bears the "heavy burden" of making a "clear showing that it is likely to succeed at trial on the merits." *Real Truth About Obama*, 575 F.3d at 347, 351. All four elements must be present. *Id.* at 346.

A. Likelihood of Success on the Merits

Unlike a typical TRO when likelihood of success on the merits is shown by a verified complaint or affidavits attached to the motion, the likelihood of success here is shown by the

---

[6] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 130 S. Ct. 2371, *reinstated in relevant part on remand*, 607 F.3d 355 (4th Cir. 2010) (per curiam); *General Parts Dist., LLC v. St. Clair*, Civ. No. 11-3556-JFM 2011, WL 6296746, at *2 (D. Md. Dec. 14, 2011) (stating that the standards for a TRO and a preliminary injunction are the same).

exhibits to the unopposed motion for summary judgment.[7] See ECF No. 98.

Santander has submitted affidavits that it obtained the RIC from CitiFinancial, which obtained it from DC Financial Services. See ECF Nos. 98-2 ¶¶ 7, 9-10, 31; 98-11 ¶ 9. The RIC permitted repossession upon default, which was defined, *inter alia*, as failure to make payments when due or otherwise abide by the RIC. RIC ¶ 12. As of December 10, 2012, Khepera-Bey's payments were 831 days past due, and he owed $17,596.57 consisting of: $12,672.17 principal, $4,240.91 interest, $683.50 fees, and $2,536.96 legal fees. ECF No. 98-2 ¶¶ 32, 35.

Khepera-Bey has not provided any evidence to rebut Santander's; as such there is no dispute of material fact.

---

[7] The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.
  The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

Under the facts presented by Santander, Khepera-Bey has breached the RIC by failing to pay for over two years. ECF No. 98-2 ¶¶ 32, 35. Under the RIC it is entitled to repossess the Vehicle. See RIC ¶ 12. The Court sees no defense that would defeat judgment for Santander, and Maryland law expressly contemplates the repossession of goods when the buyer is in default. See Md. Code Ann., Com. Law § 12-624(a). Accordingly, Santander has shown a likelihood of success on the merits.[8]

B. Irreparable Harm

Santander asserts that it will be irreparably harmed absent an injunction because it will unable to collect a money judgment without the security of the Vehicle. See ECF No. 110 at 11.

Under Maryland law, a security interest in a vehicle is only valid against a subsequent transferee if the interest is perfected. Md. Code Ann., Transp. § 13-202(a). Perfection is made by delivering information about the interest and a fee to the MVA. Id. § 13-202(b). Given the issuance of an unencumbered title to Khepera-Bey, a court is unlikely to find Santander's interest perfect. Accordingly, Santander would be unable to recover the vehicle from a purchaser.

---

[8] Given the recent development of ALJ Spencer's decision and Khepera-Bey's lack of notice that Santander is seeking a TRO, the Court declines to rule on the motion for summary judgment now.

Traditionally, an injury compensable by money damages is not irreparable. *See Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994). However, extraordinary circumstances, such as insolvency or unsatisfiability of a money judgment, can show irreparable harm.[9]

Khepera-Bey's *in forma pauperis* petition indicates that, as of at least two years ago, he had no income or assets. *See* ECF No. 2. Further, his refusal to participate in the judicial process indicates that it would likely be difficult for Santander to collect a money judgment from him. Santander also maintains that Khepera-Bey has essentially defrauded the MVA and ALJ Spencer by failing to bring to her attention the various documents he received indicating Santander's rights under the RIC. *See* ECF No. 11-12. Santander has shown a likelihood of irreparable harm.

C.  Balance of the Equities and the Public Interest

The balance of the equities favors Santander. Khepera-Bey has been fighting the lien on his vehicle for years and several judges have found that he has acted in bad faith or frivolously. *See* ECF No. 102; No. CCB-12-2150, ECF No. 2. Further, any harm to Khepera-Bey from an injunction would be small: he could

---

[9] *See E.A. Hawse Health Ctr. v. Bureau of Med. Servs.*, at *12 (S.D. W. Va. Sept. 2011) (*citing Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 206 (3d Cir. 1990); *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 830, 386 (7th Cir. 1984)).

12

continue to use the Vehicle. He would only be enjoined from conveying title or removing the Vehicle from the state. Accordingly, the equities favor Santander.

Further, the public interest supports restraining Khepera-Bey. It appears that he has attempted to manipulate the legal and administrative process through his numerous cases in this district and the administrative action. Finally putting this case to rest and adjudicating Santander's claims requires Khepera-Bey's continued ownership of the Vehicle and its presence within this Court's jurisdiction. The public interest will be served by the final resolution of this case.

Accordingly, Santander has met the requirements for a TRO.[10] See Winter, 555 U.S. at 20. Khepera-Bey will be restrained from conveying title to the Vehicle or removing it from Maryland.

---

[10] The Court is mindful of the federalism and comity principles implicated in this case, given Maryland's adjudication of DC Financial Services's lien. The Court has considered several abstention and related doctrines, such as Colorado River abstention and the Rooker-Feldman doctrine and finds them inapplicable. See Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976) (federal courts should decline to hear cases when there are ongoing state proceedings); Holliday Amusement Co. of Charleston, Inc. v. South Carolina, 401 F.3d 534, 537 (4th Cir. 2005) ("The Rooker-Feldman doctrine is a jurisdictional rule providing that lower federal courts generally cannot review state court decisions."). This case was before this Court--and the motion for summary judgment ripe--long before the Maryland administrative action was initiated. This Court is convenient to the parties: Khepera-Bey filed suit here, and Santander has continued to litigate here after the dismissal of Khepera-Bey's claims. Accordingly, the Colorado River factors do not counsel abstention, and the Rooker-Feldman

D.  Security

Fed. R. Civ. P. 65(c) requires that Santander "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Given the potential for damages if Khepera-Bey is sued for breach of a contract to sell the car and the restraint on his ability to remove it from Maryland, the Court believes that $4,500 security is appropriate.[11]

III. Conclusion

For the reasons stated above, the motion will be granted in part, and a TRO will be entered.

_6/21/13_  
Date

_/s/ William D. Quarles, Jr._  
William D. Quarles, Jr.  
United States District Judge

---

doctrine does not apply. *See Exxon Mobil Corp. v. Saudi Basic indus. Corp.*, 544 U.S. 280, 292 (2005) (holding that the *Rooker-Feldman* doctrine is inapplicable when the federal action began before the state court judgment); *MidAtlantic Int'l, Inc. v. AGC Flat Glass N. Am., Inc.*, 497 F. App'x 279, 282 (4th Cir. 2012) (listing *Colorado River* factors).

[11] This amount is within the range of values for a base model 2003 Pathfinder with 100,000 miles according to *Kelley Blue Book*. See http://www.kbb.com/nissan/pathfinder/2003-nissan-pathfinder/se-sport-utility-4d/?intent=trade-in-sell&vehicleid=2971&mileage=100000&pricetype=private-party (last accessed June 19, 2013).