IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | |
|---|---|
| KALLIATEN SEKHNEB KHEPERA-BEY *formerly known as Khaval Stewart* | * |
| Plaintiff/Counter-defendant, | * |
| v. | * CIVIL NO.: WDQ-11-1269 |
| SANTANDER CONSUMER USA, INC., | * |
| Defendant/Counter-plaintiff. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Defendant Santander Consumer USA, Inc. ("Santander") counterclaimed against *pro se* plaintiff KalliAten SekhNeb Khepera-Bey[1] for damages and possession of a 2003 Nissan Pathfinder (the "Vehicle"). Pending are Santander's motion for summary judgment and Khepera-Bey's motion to dismiss.[2] For the following reasons, Khepera-Bey's motion will be denied. Santander's motion will be granted in part and denied as moot in part.

---

[1] Khepera-Bey was formerly known as Khaval Stewart, and many of the documents in this case refer to him that way. For consistency, the Court will refer to him as Khepera-Bey.

[2] The motion to dismiss also seeks vacatur of the temporary restraining order ("TRO"). ECF No. 121. Because the TRO has been vacated, *see* ECF No. 122, that portion of the motion is moot.

I.  Background[3]

   A.  Factual Background

On August 10, 2006, Khepera-Bey purchased the Vehicle from Lanham Ford. ECF No. 98-3. Khepera-Bey executed a retail installment sales contract ("RISC") to finance $18,324.13 toward the purchase of the vehicle. See RISC. The RISC, signed by Lanham Ford, indicated that it was to be assigned to "DC FIN SVCS AMER LLC", i.e., Daimler Chrysler Financial Services Americas, LLC ("DC Financial Services"). Id. The RISC provided the right "without the use of force or other breach of the peace . . . lawfully [to] repossess (take back) the vehicle" upon default--defined as failure to make a payment when due or abide by the terms of the RISC. See id. ¶ 12.

On September 22, 2006, DC Financial Services assigned the RISC to CitiFinancial Auto Corporation ("CitiFinancial").[4] ECF Nos. 98-2 ¶ 7, 98-11 ¶ 9. Khepera-Bey made some payments to

---

[3] In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[4] The assignment was pursuant to Auto Finance Alliance Program Agreement under which CitiFinancial's predecessor in interest (TranSouth Financial Corporation) "purchased retail installment sale contracts from DaimlerChrysler Services North America LLC" (DC Financial Services's predecessor in interest). ECF No. 98-11 ¶ 5. "The Auto Finance Alliance Program Agreement was amended several times between the years 2004 and 2007." Id. ¶ 6.

2

CitiFinancial, but at least seven payments were deferred at his request. ECF No. 98-2 ¶ 8.

On June 23, 2010, CitiFinancial and Santander executed a Master Servicing Agreement authorizing Santander to act as CitiFinancial's agent and requiring Santander "to manage, service, administer, and make collections on the loans." ECF Nos. 98-2 ¶¶ 9-10, 98-4. On September 6, 2010, Santander sent Khepera-Bey a welcome letter informing him that it was now the servicer of the loan. ECF No. 98-5. On October 4, 2010, Santander sent Khepera-Bey an account summary that indicated he was 39 days delinquent because he had not made payments due August 25 and September 25, 2010. ECF No. 98-2 ¶ 17. On October 10, 2010, Khepera-Bey made a payment of $405.27; this did not make his account current. Id. ¶ 18.

On November 14, 2010, Santander sent Khepera-Bey a notice of intent to repossess the Vehicle because of his missed payments. ECF No. 98-7. On December 2, 2010, Khepera-Bey filed a complaint with the Maryland Department of Labor, Licensing, and Registration, ("DLLR") alleging that Santander was engaging in improper collection practices. On January 3, 2011, Renaissance Recovery Solutions, LLC ("Renaissance") repossessed the Vehicle for Santander. ECF No. 98-2 ¶ 28. After DLLR

"advocated on behalf of" Khepera-Bey,[5] by January 31, 2011 letter, Santander agreed to release the vehicle, and stressed to the DLLR the importance of Khepera-Bey's payment of his loan.[6] ECF No. 98-10.

On October 1, 2011, CitiFinancial assigned all rights under the RISC to Santander. ECF No. 98-2 ¶ 31. As of December 10, 2012, Khepera-Bey owed Santander $17,596.57 consisting of: $12,672.17 principal, $4,240.91 interest, $683.50 fees, and $2,536.96 legal fees.[7] *Id.* ¶ 35.

B. Procedural History of Khepera-Bey's Claims

On May 6, 2011, Khepera-Bey filed suit against Renaissance and Santander for debt collection violations. ECF No. 1. With the complaint, he filed a motion to proceed *in forma pauperis* showing no assets or income. ECF No. 2. Over the course of the litigation, Khepera-Bey filed numerous frivolous motions. *See*

---

[5] Correspondence recently received by the Court--but not part of the summary judgment record--indicates that the DLLR concluded that Santander had improperly provided Khepera-Bey notice of the repossession. *See* ECF No. 123-2 at 16-17. Further, the Maryland Motor Vehicle Administration ("MVA") had found that Santander had failed to adequately show that it had the right to repossess under DC Financial Service's security interest. *See* ECF Nos. 123-3 at 11, 123-5 at 3.

[6] Although Santander was issued title to the Vehicle, the MVA deemed it issued in error and issued duplicate title to Khepera-Bey. *See* ECF No. 123-2 at 20.

[7] Mooney acknowledges that the legal fees are capped at 15% of the unpaid balance under the RISC and states that Santander's legal fees "have far exceeded this limited balance." ECF No. 98-2 ¶ 35 & n.1; *see* RISC ¶ 12.

*generally* ECF No. 74 (memorandum opinion discussing then-pending motions). After the resolution of numerous pending motions, on June 2, 2012, Santander answered and counterclaimed for damages on the RISC and possession of the vehicle. ECF No. 79. Khepera-Bey has not answered the counterclaim.

On August 17, 2012, Khepera-Bey filed what purported to be a "notice of removal" to the Moorish Supreme Court of Equity and Truth (the "Moorish Court"). ECF No. 81 (STRICKEN); *see also* ECF No. 82 (STRICKEN) (discussing "points and authority"). On November 26, 2012, Khepera-Bey filed a document from the Moorish Court purporting to be a "judgment"--that bore some indicia of this Court--against Santander for $30,000,000 and Renaissance for $5,000,000. ECF No. 90 (STRICKEN).

On January 10, 2013, the Court struck from the record Khepera-Bey's "removal" and "judgment" documents and enjoined Khepera-Bey from attempting to enroll the "judgment" in any court. ECF No. 97. On January 15, 2013, Santander moved for summary judgment on all claims. ECF No. 98. On February 28, 2013, the Court adopted Magistrate Judge Timothy J. Sullivan's report and recommendation and dismissed with prejudice Khepera-Bey's complaint for discovery violations and abuse of the judicial system. ECF No. 103.

On March 8, 2013, Khepera-Bey filed a "notice of appeal" to the Moorish Court. ECF No. 104. This Court transferred the

record to the U.S. Court of Appeals for the Fourth Circuit. *See* ECF No. 106. On May 13, 2013, the Fourth Circuit dismissed the appeal for failure to prosecute. ECF No. 107.

C. The Administrative Decision, Sale of the Vehicle, and the Temporary Restraining Order

It appears that Khepera-Bey filed with the MVA several complaints and requests to invalidate DC Financial Service's lien (one was dated June 22, 2011). *See* ECF No. 123-3 at 57. On January 16, 2013, the MVA requested a hearing. *See* ECF No. 110-2 at 5.

On March 13, 2013, Administrative Law Judge ("ALJ") Sondra L. Spencer conducted a hearing. *Id.* Assistant Attorney General ("AAG") Leight Collins appeared for the MVA. *Id.* at 5-6. Neither Khepera-Bey, who objected to the hearing, nor DC Financial Services appeared. *Id.* at 6; ECF No. 114. Santander did not receive notice of the hearing. ECF No. 123-1 ¶¶ 11, 12.

ALJ Spencer framed the issue as "[s]hould the lien held by Respondent [DC Financial Services] be released by the MVA pursuant to section 13-205(d)[8] of the Transportation article?"

---

[8] Section 13-205(d) reads:
(1) If, after notice to all interested parties and a hearing, the Administration determines that an indebtedness does not constitute a security interest, it shall:
 (i) Release the indebtedness on the certificate of title; or
 (ii) Issue a new certificate of title and deliver the certificate to the owner.

6

*Id.* She consulted numerous documents; those relevant to this case included (1) a March 30, 2011 Statement of No Interest by DC Financial Services,[9] (2) Khepera-Bey's Application for Certificate of Title, (3) Khepera-Bey's complaint, (4) Registry of Motor Vehicles - Lienholder List, (5) CitiFinancial Limited Power of Attorney, (6) DC Financial Service's Maryland Notice of Security Interest Filing, and (7) Santander Consumer Power of Attorney, all of which apparently came from the MVA. ECF No. 110-2 at 6-7.

ALJ Spencer made six findings of fact:

1. On August 10, 2006, Respondent Khepera-Bey purchased the Vehicle from Lanham Ford.

2. At the time of the purchase, the lienholder was Respondent [DC Financial Services].

3. Respondent [DC Financial Services] did not assign its interest in the Vehicle to another lienholder.

4. On or about March 30, 2011, Respondent [DC Financial Services] notified the MVA that it no longer held any security interest or claim of rights to the Vehicle.

5. The MVA did not accept Respondent's [DC Financial Services]'s statement of no interest because it was not written on letterhead. Respondent's [DC Financial

---

(2) Any person aggrieved by the decision of the Administration may appeal in accordance with the provisions of the Administrative Procedure Act.

[9] According to an MVA investigator, a DC Financial Services agent stated that the statement of no interest was filed erroneously, apparently because DC Financial Services had disbanded under "President Obama's . . . restructuring of that industry." ECF No. 123-3 at 18. Despite Khepera-Bey's claims, the investigator found that DC Financial Services had not violated Maryland law through the RISC. *See id.*

> Services]'s name, address and phone number [were] printed in the bottom right hand corner of the letter.
>
> 6. Respondent [DC Financial Services] has no interest in the Vehicle and the lien should be released.

ECF No. 110-2 at 7. Perplexed by the MVA's failure to process DC Financial Services's statement of no interest, ALJ Spencer ordered the lien released. *Id.* at 8. Believing that there was no other lien, despite having considered evidence of CitiFinancial's and Santander's powers of attorney, she ordered a new title issued to Khepera-Bey free of DC Financial Service's lien. *Id.* at 9. On June 6, 2013, the decision was mailed. *Id.*

On June 10 and 11, 2013, Khepera-Bey emailed the ALJ's opinion and order to counsel for Santander and Renaissance. ECF No. 11903 at 4-5. On June 13, 2013, Khepera-Bey was issued a free and clear title to the Vehicle. *Id.* at 7. Although Khepera-Bey's emails indicated that "the suit"[10] is going to be reopened, he has not filed any new documents supporting his claims. *See, e.g.*, ECF No. 110-3 at 5.

On June 18, 2013, Santander moved for a TRO. ECF No. 110. On June 21, 2013, the Court granted the motion in part and prohibited Khepera-Bey from selling the Vehicle or removing it from Maryland. ECF No. 117.

On June 26, 2013, Santander wrote to the Court that AAG Collins had indicated that Khepera-Bey had represented that the

---

[10] It is unclear to what case Khepera-Bey referred.

Vehicle had been "sold at a public auction during the week of June 17th." ECF No. 118. Counsel demanded that Khepera-Bey provide details of the sale, but he refused. ECF No. 118-1. On June 27, 2013, the Court extended the TRO and ordered Khepera-Bey to provide documentation about whether the Vehicle had been sold. ECF No. 120.

That day, the Court received Khepera-Bey's "motion to dismiss defendant's/counter-plaintiff's counter claim, vacate temporary restraining order and preliminary injunction" under various abstention doctrines because of the MVA determination.[11] ECF No. 121. A heavily redacted exhibit indicated that the Vehicle had been sold on April 19, 2013. ECF No. 121-6. Through the U.S. Marshal Service, the Court confirmed that Maryland Motor Vehicle Administration ("MVA") records indicated that a person other than Khepera-Bey was the owner.[12] On June 28, 2013, the Court dissolved the TRO, ordered the parties to produce documentation about the current state of the title, and ordered Santander to respond to Khepera-Bey's abstention arguments. ECF No. 122.

---

[11] The motion was dated June 25, 2013.

[12] See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (courts may "take judicial notice of matters of public record"); In re Flaherty, 335 B.R. 481, 486 n.3 (Bankr. D. Mass. 2005) (taking judicial notice that vehicle title records may be obtained from state registries).

On July 12, 2013, Santander opposed the motion to dismiss and submitted the MVA's title documents, the administrative record of the hearing, and additional correspondence from AAG Collins. ECF No. 123. These documents show that Khepera-Bey sold the vehicle to Chikezie Kanu on April 19, 2013. ECF No. 123-4 at 57, 61. On May 20, 2013, Kanu sold the Vehicle to Andrew Dent. *Id.* at 65. After the hearing, a duplicate, unencumbered title was issued to Khepera-Bey. *See* ECF No. 123-5 at 3. AAG Collins has proffered on behalf of the MVA that Khepera-Bey represented to Rhonda Witt, Manager of the MVA's Vehicle Services Division, that the April 19, 2013 transfer of title to Kanu--and the resulting title issued --had been fraudulent. *Id.* Nevertheless, the MVA still lists Dent as the owner of the vehicle, *see* ECF No. 123-4 at 3, and there is no indication that Khepera-Bey has possession. Khepera-Bey has not filed any additional documents.

II. Analysis

    A. Khepera-Bey's Motion to Dismiss

Khepera-Bey seeks dismissal of Santander's counterclaim on abstention grounds because of the MVA's rulings on title to the Vehicle. ECF No. 121. Santander opposes abstention, but

withdraws its claim for return of the vehicle as moot.[13] ECF No. 123 at 2 n.1. Because of the important principles of comity and federalism underlying the abstention doctrines--and the recent developments in the Vehicle's chain of title--the Court will address these issues even though Khepera-Bey's motion to dismiss was filed over a year after Santander's counterclaim. See ECF Nos. 79, 121.

Khepera-Bey appears to assert *Burford*,[14] *Colorado River*,[15] and *Younger*[16] abstention. ECF No. 121 at 5-7. "Ordinarily federal courts have an unflagging obligation to exercise their jurisdiction." *Wash. Gas Light Co. v. Prince George's Cnty. Council*, 711 F.3d 412, 418 (4th Cir. 2013) (internal quotation marks omitted). "Abstention remains the exception, not the rule." *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008).

None of these doctrines counsels abstention in this case.

Under *Burford*, federal courts

> must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are

---

[13] Although Santander calls its claim replevin, see ECF No. 123 at 2 n.1, it is actually detinue as it seeks possession after judgment. See Md. Rules 12-601, 60-2.

[14] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

[15] *Colorado River Water Conservation Dis. v. United states*, 424 U.S. 800 (1976)

[16] *Younger v. Harris*, 401 U.S. 37 (1971).

"difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989). There are no difficult questions of state law in this case; Santander's remaining claim is a simple claim for contract damages. Further, there was no state policy formulated through the administrative proceeding-- it was a simple factual inquiry into liens on the Vehicle. Accordingly, *Burford* abstention is not appropriate.

Similarly, Khepera-Bey's reliance on *Younger* is misplaced. *Younger* generally prohibits federal courts from interfering in state criminal proceedings[17] "if (1) there is an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides adequate opportunity to raise constitutional challenges." *Nivens v. Gilchrist*, 444 F.3d 237, 241 (4th Cir. 2006). There are no ongoing state proceedings, and the factual determination of a car title does not implicate "important, substantial, or vital state interests." *See id.* *Younger* abstention is inappropriate.

---

[17] *Younger* has been extended to a limited number of civil cases raising constitutional claims, which are not relevant here. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987).

*Colorado River* abstention is based on "wise judicial administration" rather than "weightier considerations of constitutional adjudication and state-federal relations." *Colorado River*, 424 U.S. at 818. "The threshold question in deciding whether Colorado River abstention is appropriate is whether there are parallel federal and state suits."[18] *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005). Relevant factors for abstention identified by the Supreme Court include "inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums." *Id.* (citations omitted). The Fourth Circuit has identified six factors to be considered:

> (1) whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*MidAtlantic Int'l, Inc. v. AGC Flat Glass N. Am., Inc.*, 497 F. App'x 279, 282 (4th Cir. 2012).

---

[18] Administrative adjudications are considered state suits. *See Martin Marietta Corp. v. Md. Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir. 1994).

Assuming that the administrative adjudication of Khepera-Bey's title is parallel litigation, the *Colorado River* factors do not counsel abstention in this case. This Court had jurisdiction long before the administrative hearing, which appeared to be just as convenient for the parties, despite Santander's lack of notice. As Santander has abandoned its claim for possession of the car, there is little risk of piecemeal litigation. Similarly, there is no *in rem* jurisdiction over Santander's contract damages claim. However, state law does provide the rule of decision, and the state courts would adequately protect Santander's contract interests. Given the few factors favoring sole state adjudication--and the conclusion of the administrative proceeding--*Colorado River* abstention is inappropriate.

Accordingly, dismissal on abstention grounds is unwarranted.[19] Khepera-Bey's motion to dismiss will be denied.

---

[19] Although not raised by Khepera-Bey the Court also notes that the *Rooker-Feldman* doctrine is inapplicable. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "The *Rooker-Feldman* doctrine is a jurisdictional rule providing that lower federal courts generally cannot review state court decisions." *Holliday Amusement Co. of Charleston, Inc. v. South Carolina*, 401 F.3d 534, 537 (4th Cir. 2005). However, the *Rooker-Feldman* doctrine does not apply when the federal action began before the state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). Rather, traditional preclusion rules apply. *Id.* at 293. Because this case began long before the hearing before ALJ Spencer, this Court is not deprived of jurisdiction under *Rooker* and *Feldman*. *See id.* at 292.

B.  Santander's Motion for Summary Judgment

1.  Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[20] In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in his favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club,*

---

[20] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

15

*Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

2.  The Merits

Santander seeks summary judgment on its breach of contract claim for the amount still due under the RISC.[21] ECF No. 98-1; *see also* ECF No. 123 at 2 n.1 (abandoning claim to possession of the vehicle). Khepera-Bey has not filed any document directly opposing the motion to summary judgment.[22]

---

[21] Santander also sought summary judgment on Khepera-Bey's claims and its claim for possession of the vehicle. Because Khepera-Bey's claims have been dismissed, *see* ECF No. 103, and Santander has abandoned the possession claim, *see* ECF No. 123 at 2 n.1, the motion will be denied as moot as to those claims.

[22] The Court notes that Khepera-Bey's motion to dismiss could be construed as an opposition to the motion for summary judgment asserting invalidity of the RISC. *See* ECF No. 121 & Exs. However, the motion to dismiss was filed over five months after the motion for summary judgment, long after the deadline for the response had passed. *See* Local Rule 105.2.a (setting 14 day time limit for filing of oppositions); ECF Nos. 98, 121. Khepera-Bey has not asserted any reason for his untimeliness or sought Santander's consent for an extension. *See* Fed. R. Civ. P. 6(b)(1) (requiring good cause for an extension of time); Local Rule 105.9 (generally requiring counsel to request other side's consent for extensions of time). Given Khepera-Bey's past abusive behavior, denial of this Court's jurisdiction over his claims, filing of a "judgment" that could be falsely read as issuing from this Court, and apparent abandonment of this case until the TRO was entered, *see* ECF Nos. 74, 89, 96, 102, 107, the Court will not consider the motion to the extent it is an untimely opposition to Santander's motion for summary judgment. *See Marryshow v. Flynn*, 986 F.2d 689, 693 (4th Cir. 1993) ("When the date specified for filing court papers is not jurisdictional, broad discretion is given to the trial court to manage its docket.").

The summary judgment record submitted by Santander shows that it is entitled to judgment on the breach of contract claim. "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). The summary judgment record submitted by Santander shows that it was assigned the RISC, on which Khepera-Bey owed $17,596.57. *See* ECF No. 98-2 ¶¶ 31, 35; *see also* Fed. R. Civ. P. 56(c)(3) (on summary judgment, the Court "need consider only the cited materials"). Khepera-Bey has failed to pay as required under the RISC since October 10, 2010. *Id.* ¶ 18. Because Khepera-Bey had a contractual duty to pay Santander, which he breached, Santander is entitled to judgment as a matter of law.

III. Conclusion

For the reasons stated above, Khepera-Bey's motion to dismiss will be denied. Santander's motion for summary judgment will be granted in part and denied as moot in part.

_8/16/13_  
Date

_/s/ William D. Quarles_  
William D. Quarles, Jr.  
United States District Judge